UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| TERRANCE REEVES )<br>8931 TOWN CENTER CIRCLE, #301 )<br>UPPER MARLBORO, MARYLAND 20774 )<br> )<br>    *Plaintiff*, )<br> )<br>v. )<br> )<br>MR. LLOYD J. AUSTIN III, SECRETARY, )<br>U.S. DEPARTMENT OF DEFENSE )<br>1000 DEFENSE PENTAGON )<br>WASHINGTON, D.C. 20301-1000 )<br> )<br>VADM FRANK D. WHITWORTH, )<br>DIRECTOR, NATIONAL GEOSPATIAL- )<br>INTELLIGENCE AGENCY )<br>7500 GEOINT DRIVE )<br>SPRINGFIELD, VIRGINIA 22150 )<br> )<br>    *Defendant.* )<br> )<br>Serve: )<br> )<br>MR. LLOYD J. AUSTIN III, SECRETARY, )<br>U.S. DEPARTMENT OF DEFENSE )<br>1000 DEFENSE PENTAGON )<br>WASHINGTON, D.C. 20301-1000 )<br> ) | Case No.:<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR EQUITABLE RELIEF AND COMPENSATORY DAMAGES**

COMES NOW, Terrance Reeves, Plaintiff, (hereinafter "Plaintiff") by and through undersigned counsel, and complains against Defendants, Mr. Lloyd J. Austin III, Secretary of the U.S. Department of Defense (hereinafter "DoD"), and VADM Frank D. Whitworth, Director of the National Geospatial-Intelligence Agency (hereinafter "NGA" or "the Agency"), (hereinafter collectively "Defendants") and in support thereof states as follows:

**INTRODUCTION**

1

1. This is an action authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq*. ("Title VII"); and the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA") for the Defendant's unlawful harassment, discrimination based on race (African American), hostile work environment, and retaliation against Plaintiff, including, but not limited to, Defendants' unlawful and discriminatory preference and treatment, as well as retaliating against Plaintiff for his statutorily-protected activity.

## JURISDICTION AND VENUE

2. This Honorable Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1331 as it asserts a claim that arises under the Constitution, laws, or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq*.; and the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), to redress and enjoin employment practices of the Defendant.

3. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

4. Venue is appropriate because a substantial part of the actions complained of are the result of actions and employment practices of Defendant VADM Frank D. Whitworth, Director of the National Geospatial-Intelligence Agency ("NGA"), which is a combat support agency of the Department of Defense operating in Springfield, VA.

5. Additionally, venue is proper in the Eastern District of Virginia Court pursuant to 28 U.S.C. §§ 1391(b) and (e) because a substantial part of the wrongful conduct complained of herein occurred in this District, Defendants transact substantial business in this District, and Defendants maintain employment records related to this action in the District.

## EXHAUSTION OF REMEDIES

6. Plaintiff has exhausted all of his administrative remedies.

7. Plaintiff filed a formal internal complaint of discrimination with the Agency on or about October 23, 2020 alleging racial discrimination (Agency Case No. NGA-0045-2020). Plaintiff amended his complaint on or around November 24, 2020, including allegations of reprisal based upon his prior EEO activity. He again amended his complaint on or about January 29, 2021, to include further incidents of discrimination based on reprisal due to his Notice of Termination During Trial Period, received on or about January 29, 2021.

8. Plaintiff requested a hearing of his case before the EEOC on or about April 21, 2021 (EEOC Case No. 570-2021-00849X).

9. On April 19, 2023, the EEOC issued a Decision and Order Entering Judgment, and on May 4, 2023, the Agency issued its Final Agency Order and notice of Plaintiff's right to appeal or file a civil action.

## NATURE OF THE ACTION

10. Plaintiff brings this action to secure protection of rights granted under the statutes mentioned above, to redress deprivation of rights thereunder, and to obtain such other relief as is necessary to redress the injury to Plaintiff resulting from Defendant's violation of those statutes.

11. Plaintiff's damages are significant, including, but not limited to, the loss of reputation, career advantage, emotional tranquility, and denial of his constitutional and statutory rights.

12. The action seeks declaratory and injunctive relief, as well as compensatory and punitive damages, both to secure future protection and to redress the past deprivation of rights guaranteed to named Plaintiff.

## PARTIES

13. Plaintiff, Terrance Reeves, is a Black, African American man. Plaintiff resides in Upper Marlboro, Maryland.

14. Defendant Mr. Lloyd J. Austin III is Secretary of the U.S. Department of Defense ("DoD"), which operates in Washington, D.C.

15. Defendant VADM Frank D. Whitworth is Director of the National Geospatial-Intelligence Agency ("NGA"), which is a combat support agency of the Department of Defense of the United States of America operating in Springfield, VA.

16. Plaintiff worked as the Chief, MOCP, and Chief Privacy Officer (CPO), Pay Band (PB) IV, from July 2019 to January 29, 2021 in the NGA's MOC in Springfield, VA.

17. During the relevant period, Defendant employed Plaintiff.

18. During the relevant period, Plaintiff was Defendant's employee within the meaning, and entitled to the protections of Title VII.

## FACTUAL ALLEGATIONS

19. Plaintiff brings this action as a result of the discrimination, harassment and disparate treatment on the basis of race (African American) and reprisal (prior EEO activity) that he was subjected to by Defendants, which resulted in a hostile work environment because of his protected characteristics.

20. During the relevant period of this Complaint, Plaintiff was the Chief, MOCP, and Chief Privacy Officer (CPO), Pay Band (PB) IV, from July 2019 to January 29, 2021 in the NGA's MOC in Springfield, VA. Based upon his race and prior EEO activity, Plaintiff was

subjected to harassment and disparate treatment by his immediate supervisors, MOC Deputy Director (DD/MOC) Gregory A. Gondeck (Caucasian, male), and MOC Director (D/MOC) Kevin P. Cichetti (Caucasian, male).

21. Beginning on or about July 2019, through on or about January 29, 2021, Plaintiff was subjected to race-based discrimination and harassment through bullying behavior, direct and indirect harassment, and the display of inappropriate pictures, creating a hostile work environment different than the treatment received by other division chiefs not of his race.

22. Plaintiff began work at the NGA in July 2019 as the Chief of the Privacy and Civil Liberties Division with the Office of Mission Oversight and Compliance. Plaintiff had worked for the federal government for fifteen (15) years.

23. Three (3) weeks after starting his position, Plaintiff had a meeting with Mr. Gondeck and Mr. Cichetti to discuss the history of the position and program. Almost immediately, Plaintiff was told not to contact his predecessors Walter Clay (African American, male) and Nerissa Murray (non-white presenting, female) because they were "poor performers" and one of them had filed an EEO complaint against them. Plaintiff was also told that Mr. Gondeck and Mr. Cichetti had removed almost all division team members save for one individual. Mr. Cichetti ended the conversation by stating "remember, you are on probation and we will get rid of you before we go down that road again," or words to that effect.

24. In or around August 2019, Plaintiff attended an offsite with Mr. Gondeck and Mr. Cichetti, the division chiefs, and the contractor support team. On this offsite, Plaintiff noticed that all the other divisions were comprised mostly, if not all, Caucasian individuals. Further, Plaintiff overheard Mr. Gondeck and Mr. Cichetti and the contractors, who were close friends of Mr. Cichetti, speak about how they did not know what the employees of the

Privacy and Civil Liberties Division did "outside of working on an excel spreadsheet." Plaintiff was appalled by the conversation and asked Mr. Gondeck, Mr. Cichetti, and the contractors to refrain from speaking about the division's performance. It was after this incident that Mr. Gondeck and Mr. Cichetti began to subject Plaintiff to discriminatory and retaliatory treatment.

25. The week after the offsite incident, Mr. Gondeck approached Plaintiff and told him that he did not think Plaintiff "would make it at NGA," or words to that effect. When Plaintiff inquired as to why, Mr. Gondeck said that it was because Plaintiff had been "wearing a suit with sneakers." After Plaintiff informed Mr. Gondeck that it was because of the long walk to the conference, Mr. Gondeck reiterated his sentiment. Later that day, Mr. Gondeck told Plaintiff that he would not have hired him, or words to that effect.

26. In or around September 2019, Plaintiff met with Mr. Cichetti and Mr. Cichetti showed Plaintiff a photo of his new AR-15 rifle. Unprompted, Mr. Cichetti informed Plaintiff that he would not have any issues with people coming into his home. Mr. Cichetti shared a story about threatening an African American man with his gun after the man had walked into his yard. Mr. Cichetti also told Plaintiff that when he was young, a group of African American boys had beat him up and "left him for dead." Mr. Cichetti stated that this had resulted in him viewing African Americans differently.

27. In or around October 2019, Mr. Gondeck and Mr. Cichetti informed Plaintiff that they were concerned he was not meeting his performance objectives. When Plaintiff asked what he could improve on, he was told that his team was missing deadlines, the work product was poor, and communication between team members needed to improve. Plaintiff explained that because he and his team were new, it would take time to acclimate. After documenting

the meeting via email, Mr. Cichetti told Plaintiff that he was impressed that he was able to accept negative feedback because if his predecessor had received the same feedback it would have resulted in a hostile argument.

28. In or around October 2019, Plaintiff received an invitation from Mr. Cichetti to attend a Halloween party at his home. Plaintiff soon learned, however, that he was the only person of his team to be invited. When Plaintiff inquired with Mr. Cichetti if he planned on inviting the rest of the team, Mr. Cichetti stated that he did not think members of the Privacy and Civil Liberties Division would feel comfortable about White people dressing up, or words to that effect. Almost all personnel who worked for Mr. Cichetti were at the party except the three (3) minority individuals who were not invited.

29. In or around October 2019, Mr. Cichetti began leaving passive aggressive notes on Plaintiff's desk regarding his attire. The notes contained phrases such as "hot mess citation" and "all my pants are sassy."

30. In or around November 2019, Mr. Gondeck and Mr. Cichetti informed Plaintiff that a contractor, Mr. Mike Bietsch (Caucasian), had made a complaint claiming that Plaintiff had intimidated and threatened him. Mr. Bietsch claimed that because Plaintiff had chosen not to sit down during a meeting, he was talking down to the other individuals in the meeting. Plaintiff stated that he was not the only individual at the meeting who chose to stand and that he had never raised his voice. After Mr. Gondeck and Mr. Cichetti spoke with other people at the meeting, Plaintiff's story was confirmed. Plaintiff heard nothing further, but informed Mr. Gondeck and Mr. Cichetti that this "investigation" was another instance of disparate treatment. In response, Mr. Gondeck and Mr. Cichetti implied that it

7

was Plaintiff's fault because he had differences with communicating with contractors and that that influences the contractors' feelings during meetings.

31. On or about February 7, 2020, Mr. Gondeck and Mr. Cichetti asked to meet with Plaintiff. At the meeting, Mr. Gondeck and Mr. Cichetti expressed that Plaintiff's choice to wear sneakers was not professional, despite the fact that Plaintiff adhered to the dress code during meetings and other formal settings. Mr. Gondeck and Mr. Cichetti informed Plaintiff of a new dress code. When Plaintiff inquired as to whether the other (White) division chiefs would receive a similar meeting, Mr. Gondeck and Mr. Cichetti stated that the meeting was specific to Plaintiff. After the meeting, the new dress code was emailed by Mr. Gondeck and Mr. Cichetti.

32. On or about February 9, 2020, Mr. Gondeck and Mr. Cichetti held another meeting with Plaintiff. At this meeting Plaintiff was informed that a contractor on his team had put in her two weeks notice. Plaintiff was further informed that this was the second contractor who had left "because of" Plaintiff. Plaintiff was confused as he had only spoken to this contractor once after she had already decided to leave. When Plaintiff asked for confirmation that the contractor had stated Plaintiff was the reason for her leaving, Mr. Gondeck began to yell and ball up his fists. At this point, Plaintiff became frightened by the aggression Mr. Gondeck was displaying and he decided he would begin staying away from Mr. Gondeck.

33. On or about May 29, 2020, Plaintiff had his scheduled midpoint review. Contrary to practice and procedure, however, Mr. Cichetti was present for the review. When Plaintiff inquired as to whether Mr. Cichetti was present for all Division Chiefs' reviews, Mr. Gondeck stated that Mr. Cichetti was only attending Plaintiff's review.

34. On or about July 28, 2020, Plaintiff reported the aggression incident to the NGA's Diversity and Inclusion Office. Plaintiff informed them of the disparate treatment he was subjected to by Mr. Gondeck and Mr. Cichetti and the hostile work environment that resulted. Plaintiff felt that submitting a formal complaint or entering into an alternative dispute resolution proceeding would make his situation worse, and so he chose to wait a bit longer before filing a formal complaint.

35. Finally, on or about October 5, 2020, Plaintiff finally chose to file a formal complaint against Mr. Gondeck and Mr. Cichetti for their discriminatory treatment. Plaintiff had previously made an informal complaint on August 7, 2020.

36. Shortly after filing the complaint and at the end of Plaintiff's performance period, he provided Mr. Gondeck with his self-assessment that included various accomplishments and projects that had succeeded throughout the year.

37. On or about October 28, 2020, Plaintiff received his FY20 Final Close Out performance rating from Mr. Gondeck that rated Plaintiff as a "1.0 – Unacceptable" despite the fact that each member of Plaintiff's team had received a rating of "Excellent." Based on reason, belief, and timing, this was Mr. Gondeck and Mr. Cichetti's retaliation for Plaintiff's EEO complaint submitted earlier that month.

38. Plaintiff immediately reported the retaliation to the EEO office.

39. On or about January 29, 2021, Plaintiff was served with a Notice of Termination During Trial Period dated January 15, 2021. The termination was sent via overnight mail and was dated January 28, 2021. The termination was dated the same day that Plaintiff had informed Defendant that he would be accepting a new job with the Department of Veterans

Affairs. Based on reason, belief, and timing, this was Mr. Gondeck and Mr. Cichetti's retaliation for Plaintiff's ongoing EEO activity and advocacy..

40. All of the above instances are evidence of the consistent discriminatory, harassing, and retaliatory treatment that Plaintiff faced at the hands of Defendants' representatives for no reason other than his protected characteristics. The more Plaintiff spoke up about the treatment he was facing, the more he was subjected to a hostile work environment and retaliation.

41. In contrast to Plaintiff, other employees not of his protected categories have received more favorable treatment and have not been subjected to the same harassment and discrimination:

    a. Ms. Deborah Pyle (Caucasian, White, female) was a Band 5 employee working under Mr. Cichetti as well. In FY20, Ms. Pyle had a limited workload and yet no administrative actions were taken against her. She also had an encounter with contractor Mike Bietsch which only resulted in an administrative notice. Further, from March 2020 to January 2021, the majority of Ms. Pyle's weekly activity reports highlighted reading books and research while Plaintiff's weekly reports highlighted achievements and contributions to the program. Ms. Pyle was not subjected to the same performance scrutiny as Plaintiff.

    b. From March 2020 to September 2020, Plaintiff and his team were the only team producing work during the start of the pandemic. In January 2020, Plaintiff moved all of the unclassified documents to a location that would allow his team to work virtually. This effort resulted in a verbal reprimand from Mr. Gongdeck. However,

in March 2020, the COVID-19 pandemic resulted in the necessity for virtual work. Plaintiff's plan for his team was then implemented Agency wide.

42. Plaintiff has been the target of racial discrimination, retaliation, and workplace hostility. The aforementioned misconduct was so egregious and pervasive that it has affected the Plaintiff's mental, emotional, and physical wellbeing in irreparable ways.

43. Plaintiff is now forced to file suit due to Defendants' inability to remedy their unlawful conduct, which has cost Plaintiff significant financial strain as well as emotional distress. Due to the discriminatory and retaliatory treatment Plaintiff experienced, Plaintiff experienced significant anxiety and depression symptoms that lead Plaintiff to look into psychotherapy options. Due to the COVID-19 pandemic, insurance issues, and family health issues, Plaintiff was unable to obtain mental healthcare. As such, Plaintiff was forced to request FMLA leave from Defendant. To date, Plaintiff still suffers from anxiety and depression as a result of the Defendant's aforementioned actions.

44. Defendant's discriminatory and retaliatory practices have been effectuated in violation of both Title VII of the Civil Rights Act and the Fair Labor Standards Act.

## COUNT I

### VIOLATION OF TITLE VII – RACE DISCRIMINATION

45. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

46. A *prima facie* case of race discrimination requires a showing of four (4) elements: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.

47. Here, the four (4) elements of a *prima facie* case of race discrimination are met. The Plaintiff is African American, and is considered a member of a protected class as stipulated under Title VII of the Civil Rights Act of 1964. Additionally, Plaintiff was a qualified Chief, MOCP, and Chief Privacy Officer (CPO), as he was hired based on his qualifications and his termination was based on a final performance appraisal made after he engaged in protected activity. Plaintiff has suffered adverse employment actions directly related to his position of being a protected class member as recognized under Title VII of the Civil Rights Act of 1964.

48. Plaintiff is a member of a protected class as an African American man.

49. Because of his race, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint in violation of Title VII.

50. Defendants' foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiff's employment.

51. Defendants knew that Plaintiff was African American prior to the adverse actions described throughout the Complaint and were aware, or should have been aware, of the discrimination Plaintiff was subjected to because of his race.

52. Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his race.

53. Defendants reprimanded Plaintiff in a way that deprived him of workplace safety and otherwise adversely affected his status as an employee because of his race.

54. Other employees who were similarly situated, but were non-Black or Caucasian individuals, have been treated more favorably than the Plaintiff with regard to the terms and conditions of employment and workplace conditions.

55. Plaintiff's race was a determining factor in Defendants' unlawful conduct toward Plaintiff.

56. Plaintiff's race was a motivating factor in Defendants' unlawful conduct toward Plaintiff.

57. The reasons proffered by Defendants for their unlawful conduct are pretextual and Defendants cannot further offer any legitimate reason for their unlawful conduct.

58. Defendants' aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of his race.

59. Defendants discriminated against Plaintiff because of his race by engaging in, tolerating, or failing to prevent race discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

60. Defendants are directly liable for the discriminatory acts or omissions of their agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

61. As a direct and proximate cause of Defendants' conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, benefits, career opportunities, medical expenses, and costs – and is entitled to all available legal and equitable remedies.

62. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and his injury is permanent in nature.

63. Defendants must comply with Title VII, but by and through their conduct, have violated Title VII.

**COUNT II**

**VIOLATION OF TITLE VII – HOSTILE WORK ENVIRONMENT**

64. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

65. When hostile work environment is alleged to have occurred as a result of unlawful discrimination, the Plaintiff must show that: (1) he belongs to a statutorily protected class; (2) he was subjected to harassment in the form of unwelcome verbal or physical conduct; (3) the harassment complained of was based on his statutorily protected class; (4) the harassment affected a term or condition of employment[1] and/or had the purpose or effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile, or offensive work environment; and (5) there is a basis for imputing liability. *See Henson v. City of Dundee*, 682 F.2d 897 (11th Cir. 1982); *Humphrey v. United States Postal Service*, EEOC Appeal No, 01965238 (October 16, 1998); *Harris v. Forklift Systems, Inc.*, 510 U.S. at 21 (1993).

66. The actions and conduct of the above-described perpetrators as set forth herein created a hostile, offensive and intimidating work environment based upon Plaintiff's protected classes as described above, and detrimentally affected Plaintiff.

67. The actions and conduct by the above-described perpetrators as set forth herein were severe and pervasive and constituted discrimination based on his protected classes.

68. The actions and conduct described herein would have detrimentally affected a reasonable person of the same protected classes in Plaintiff's position.

---

[1] The phrase "terms, conditions and privileges of employment" in Title VII is an expansive concept which sweeps within its protective ambit the practice of creating a working environment heavily charged with racial discrimination (or retaliation). One can readily envision working environment so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of group of workers. *Rogers v. EEOC*, 454 F.2d 234 (1971).

69. Defendants knew or should have known of the harassment, discrimination, and disparate treatment described herein. Defendants have failed to address the problems and further failed to implement effective and appropriate measures to stop these acts.

70. The ongoing discriminatory and harassing acts of Plaintiff's immediate supervisors, MOC Deputy Director (DD/MOC) Gregory A. Gondeck and MOC Director (D/MOC) Kevin P. Cichetti, created a hostile work environment culminating in Plaintiff's termination during his trial period on or about January 29, 2021.

71. By failing to conduct a prompt and thorough investigation of Plaintiff's allegations of discrimination; failing to redress the discrimination and harassment of Plaintiff; by consciously failing to protect Plaintiff from discrimination and harassment within the Agency; and by punishing Plaintiff for his complaints of discrimination and disparate treatment, Defendants exacerbated the hostile work environment suffered by Plaintiff and intentionally discriminated against Plaintiff in violation of Title VII.

72. Defendants' actions, and failure to act, amounted to discrimination under Title VII.

73. As a direct result of Defendants' unlawful acts, Plaintiff has suffered damages, including but not limited to lost wages and emotional and mental distress.

## COUNT III

### VIOLATION OF TITLE VII – RETALIATION

74. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

75. Title VII of the Civil Rights Act prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," 42

U.S.C. § 2000e–2(a)(1), and from retaliating against employees for engaging in activity protected by Title VII, *id.* § 2000e–3(a). To that end, an employer may not create or condone a hostile or abusive work environment that is discriminatory. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64–65 (1986).

76. Here, Plaintiff faced retaliation for the complaints he submitted internally with the Agency, as well as externally with the EEOC.

77. Soon after complaining, Plaintiff was subjected to the ongoing unlawful conduct and adverse actions alleged throughout this Complaint in violation of Title VII.

78. Defendants subjected Plaintiff to the aforementioned adverse employment actions because of his opposition to the unlawful and discriminatory employment practices of Defendants in violation of Title VII.

79. Defendants, including Plaintiff's supervisors, knew of Plaintiff's engagement in protected activity prior to engaging in the aforementioned adverse actions when they were informed by Plaintiff directly, advised by an EEO representative, or otherwise should have known that Plaintiff engaged in the complaint process based on his informal and formal complaint filings. The adverse retaliatory actions which Plaintiff has been subjected to are a direct result of Plaintiff having previously engaged in statutorily-protected activity.

80. Plaintiff's prior protected activity was a determining factor in Defendants' unlawful conduct toward Plaintiff.

81. Plaintiff's prior protected activity was a motivating factor in Defendants' unlawful conduct toward Plaintiff.

82. Similarly situated employees (no known prior EEOC activity) were not subjected to the same, similar, or any adverse treatment.

83. Defendants' unlawful conduct has created a climate of fear and isolation for Plaintiff and other employees, which creates a chilling effect in violation of Title VII.

84. The reasons proffered by Defendants for their unlawful conduct are pretextual and Defendants cannot further offer any legitimate reason for their unlawful conduct.

85. Defendants' unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

86. Defendants' retaliatory conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his participation and opposition to Defendants' discriminatory conduct.

87. Defendants ar4e directly liable for the discriminatory acts or omissions of their agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

88. Defendants' actions were intentional, reckless, and malicious.

89. As a direct and proximate cause of Defendants' conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

90. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and his injury is permanent in nature.

91. Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff contributing in any way thereto.

92. Defendants must comply with Title VII, and by and through their conduct, violated the law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Terrance Reeves, respectfully prays that this Court grant him the following relief:

a. Enter a declaratory judgement finding that the foregoing actions of Defendants violated Title VII;

b. Enter a permanent injunction directing Defendants to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

c. Award back pay and compensatory damages in the amount of $500,000.00 that would fully compensate Plaintiff for the economic loss, loss of promotional potential, reputation, lost wages, lost job benefits; physical and psychological injury, humiliation, embarrassment; and mental and emotional distress caused by the conduct of the Defendants alleged herein;

d. Award Plaintiff reasonable attorneys' fees and costs incurred in this action; and

e. Order such other relief as this Court deems just and equitable.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all issues so triable herein.

Dated: July 13, 2023

                                                        Respectfully submitted,

                                                        By: /s/ Dionna Maria Lewis
                                                        Dionna Maria Lewis, Esq.
                                                        District Legal Group, PLLC

700 Pennsylvania Ave SE, Suite 2098
Washington, D.C.20003
Tel. (202) 486-3478
Dionna@DistrictLegalGroup.com
*Counsel for Plaintiff Terrance Reeves*